The first case for argument this morning is 17-2507 TEK Global v. Sealant Systems. Mr. Gibson, whenever you're ready. Good morning, Your Honor. May it please the Court, Stan Gibson on behalf of Sealant Systems and ITW Global Tire Repair. The judgment below should be reversed for several independent reasons, two of which I will focus on today. The first is that the District Court erred in denying judgment as a matter of law on the issue of lost profits. Because in the first instance, that's an issue of law for the Court, and the District Court did not analyze properly the capacity issue because there was no evidence presented by TEK on capacity in addition to other problems. Second, the District Court erred in claim construction by not construing the container connecting conduit in the patent, Claim 26, as a means plus function term, which was discussed during the claim construction hearing. In the blue brief at 23, SSI contends that, quote, Claim 26 requires that the outer casing connect the container to the compressor, close quote. I believe that would require a construction that the outer casing rather than the kit is the antecedent of the phrase, and the phrase is, and additionally comprising of container connecting conduit. Where in the record below did SSI argue for that construction? That's a different issue than the means plus function issue, Your Honor. In the means plus function, the container, the means plus function issue, the container connecting conduit should be construed as a means plus function term, which is a different point than the outer casing has to be the part that has the connecting conduit. So there's a difference between Claim 1 and Claim 26 in that regard. Claim 1 talks about the kit. In Claim 26, to Your Honor's point, we were arguing the plain meaning and the fact that there are three separate independent clauses that talk about the kit comprising. So you're not arguing for any construction? Not on that issue, Your Honor. That's just a plain meaning argument, Your Honor, and that there was not substantial evidence to support the jury's finding because the outer casing, in the plain meaning, the outer casing has to be the part that connects the container to the compressor, and everyone agreed in the court below that the outer casing did not make that connection. Okay. Regarding admissibility of the IPR, as I understand the record, despite the court granting SSI's motion to exclude reference to prior proceedings, the district court found that SSI's opening statement with multiple mentions of quote, prior art that may or may not have been before the PTO likely left a misimpression about the degree to which the PTO, I'm quoting, considered prior art and that misimpression has to be cured. When asked by the court to choose a cure of either a jury instruction or on cross-examination, according to the record, you said it probably makes sense to deal with it on cross-examination. Is that correct? That is correct, Your Honor. After being given the choice of either having a stipulation or it being done on cross-examination, the district court had decided that there would be a remedy and there would be a discussion of the IPR and left it up to you. Did you further object during cross-examination? I don't believe that there was a further objection during cross-examination given the court's prior... But the court had previously decided not to let the IPR evidence in, right? That's correct, Your Honor, after a motion to eliminate. And it was only because, in his view, of your assertion of the, your discussion of the examination that that would be allowed, right? That's correct, Your Honor. Okay. Could I ask you to address the district court's treatment of the Bridgestone reference and the question of whether that is an error? As I understand it on our initial appeal, I think Judge Wallach and I were both on the original panel, that it was the hose that you identified was in the figure one was hose 54, correct? That's correct, Your Honor. And now you are arguing that a different hose, which is labeled 66 in that figure one, is the connecting hose, correct? That is correct, Your Honor. And we were not permitted to make that argument because the district court interpreted the federal circuits, which Your Honor and Judge Wallach were on the panel, interpreted that ruling as precluding allowing any argument regarding Bridgestone having an additional hose. The district court did permit an argument that Bridgestone had a three-way valve but not the additional hose. Where in the record did you lodge a formal objection to that ruling? In the, to the ruling on the Bridgestone? Uh-huh. There's, there's argument in, there was a motion in Lemonet that was filed by Tech, the plaintiff in that situation. That motion in Lemonet was granted over our objection, Your Honor. And the motion in Lemonet prohibited you from relying on hose 66? Yes, it prohibited us from arguing that Bridgestone had an additional hose at all, regardless of whether that was hose 66 or another hose. We were not permitted to argue anything about Bridgestone having an additional hose, only that it had a three-way valve. But the impact of that is you have an alternative, a theory that is different than the theory you presented in the first round of appeals, right, with regard to Bridgestone. That is correct, Your Honor. And so your view of our earlier opinion is that you, of course, you were operating under a different claim construction then, because we flipped the claim construction on direct. So your view is that you were precluded from arguing the same theory, certainly by the law of the case, but a different theory involving Bridgestone should have been permitted under our prior opinion. Is that your argument? That is our argument and our position. That is precisely correct, Your Honor. And that had a serious impact and prejudicial impact on the proceedings below, because we were not allowed to argue that Bridgestone had that additional hose and the three-way valve, which is all that allowed the 110 patent to issue over the Erickson reference, and that is something that is not in dispute. The Erickson reference would have precluded the 110 patent from issuing other than this three-way valve and additional hose. So that argument stands independent of the infringement. If we were to hypothetically disagree with you on the means plus function issue, so that would essentially be an affirmance of the infringement portion, but sending it back on the validity question. That is correct, Your Honor. Going back to the point that Judge Wallach raised, which is what the judge did in terms of allowing the IPR. So your view was that in the absence of your statement, in your discussion of the examination in the opening statement, the judge was satisfied that the prejudicial impact of introducing the IPR outweighed the probative value? Yes, Your Honor. My recollection is the judge had agreed with us in a motion, limine, that the IPR would not be something that could be discussed and used during the case, either in opening or during examination of witnesses. But in our view, the district court wrongly concluded that the opening statement, which was limited to just talking about the original examination of the patent, somehow opened the door to the IPR. But why is he not right? Doesn't your opening the door in the opening statement to talking about the original examination, the jury doesn't know there was an IPR. So your view of how the patent office looked at this patent in terms of whether or not the prior art was there, why wasn't he just correct to say, well you've done that and that's really only half the issue. So given that you've opened the door with respect to what was before the patent office and the examination, it's only fair that the other side should sort of cabin that by being able to point out that during the IPR, which wasn't instituted, the prior art reference was before the PTO. Well the reason is, Your Honor, is because the opening statement was very limited in terms of looking at what the original examiner had before. It wasn't talking about anything later. It was only talking about what the original examination was. Yeah, but if the jury doesn't know that there was an IPR later, then one would fairly conclude that the examination that you're referring to in the opening statement was the beginning and end of the patent office consideration of this matter. In other words, the patent office never looked at this patent with this prior art reference. Looked at this prior art reference. So, you know, why isn't it just sort of fair? Or fair enough, given our standard of review with respect to what the district court can and cannot do. I think because of the prejudicial nature of the IPR proceedings themselves, they outweigh any probative value. The opening statement was very limited, just talking about the original. The opening statement also was responding to something that the patentee said in its opening statement. They spent a lot of time talking about the initial examination and how everything was before the examiner, right? That's correct, Your Honor. They did talk about how the patent was allowed and what it was allowed over and those types of things, Your Honor. That's correct. What did they say? This preceded your opening statement, right? They went first. They did go first. Did they say this prior art was before the examiner? I don't recall if they did that specifically with Erickson. There were two patents that were before the examiner. There was Erickson in the initial examination. There was the Erickson. There was the Interdynamics patent. I don't recall at this exact moment whether they specifically called out those, but I think they did. By name, they did say that the patent was allowed because of, they went through the examination, so the patent was allowed because of the three-way valve and the additional hose. That was their way of saying the patent was novel. In my response and opening, I was discussing that Bridgestone was not before the examiner when it initially allowed the patent. That was responding to what they had said in their opening. I did want to spend a little bit of time. I have some questions for you, actually. I'm here to answer them. Go ahead. In its reply brief at 15, SSI says, Tech does not dispute that Tech's counsel compared products during his rebuttal closing argument. I don't see any such concession. Tech is clearly arguing that its physical demonstration of the Tech Tire kit sealing container connection to the compressor in its closing rebuttal argument was to rebut how SSI's expert, Dr. King, misinterpreted the claim language to exclude a key embodiment. It seems to me that that's misleading to assert the conclusion that it conceded it performed a product-to-product comparison. Well, in our view, that's what they're saying. They're not saying that they, they're saying we opened the door to it or that SSI opened the door to the product-to-product comparison, but they're not saying that they didn't do it. That's how I interpreted their brief. And from the record, it's clear that that's what was done in the rebuttal closing. There was a direct comparison of the Tech kit, which I believe we've had transmitted to your honors for review. It's opened up, and they had that kit before them and then a picture of the SSI kit, which is also before your honors. And they compared them to show that they were the same in terms of the connection between the compressor and the container. And that kind of comparison, that product-to-product comparison, is something they just should not be permitted to do. We did not open the door to it. We spent time comparing the SSI kit and its operation to the claim language and also to a couple of figures in the patent, but never to the Tech product itself. So as I reviewed their brief, what it looks to me like they're saying is that they did do the comparison, but that we opened the door to it. But there isn't any basis to show that there wasn't any opening to the door. How can SSI argue that there was no evidence that Tech's kit was a commercial embodiment of the 110 patent, or that no witness ever testified that Tech's kit practices all the claims of the 110 patent? That's in your gray brief. Yes, it is, Your Honor. The issue there is that  There's Claim 1 and Claim 26. Dr. King was asked on questions, is the Tech kit a commercial embodiment of the 110 patent? He wasn't asked about specific claims and whether it had all the elements in the claims. And Claim 1 and Claim 26 can have some differences between the two of them. And the fact that Claim 26, there's a requirement of the outer casing connecting the compressor to the container. And they argue, and Tech says that in Claim 1 it has to be the kit. Well, Claim 1, they showed that Your expert is, Tech's expert, Mr. Mariani, testified that Tech's kit is an embodiment of the 110 patent, stating in part, quote, this is the device that holds the patent. Do you stand by your claims in briefing that Tech's kit doesn't practice all the claims of the 110 patent? Well, Mr. Mariani wasn't their expert. Tech holds the patent. And he's saying that Tech holds the patent. I don't think there's anywhere where someone went through claim by claim, element by element, and said this is what's in the Tech kit. That was never done. That was never part of the case. And that's the issue that just was never presented. They don't have, Dr. Casaruni was their expert. Dr. Casaruni never went through element by element and said here it is, here's the 110 claim 1 or claim 26 element by element. Here's the Tech kit and how it practices each of those elements. Out of my time, I just wanted to reserve the rest of my time for rebuttal. Yes, you have no more time, but we'll restore some rebuttal. Thanks. Good morning. Good morning. May it please the court. Dan Jackson for Appellee's Tech Global and Tech Corporation. Could we address this point about the introduction of the IPR into the case? Yes, your honor. I sent for the opening statements of both sides and got the transcript of that. And it seems to me that you, not you personally, but your counsel for the patent piece spent a good deal of time in his opening statement arguing that all the prior art had been before the examiner, that there is a presumption of validity and that the jurors should defer to what the examiner concluded. And for example, you talk about how the patent goes to an expert and he has to study what's already out there at the time. And he said the prior art does not disclose or render obvious an additional hose or three-way valve. And then he said these additional references do not teach or fairly suggest a loaner in combination of the invention as claimed here. So he's affirming that hey, I've looked at what's out there. This three-way valve and additional valve is new and worthy of protection. So you having introduced the initial examination and said that the examiner considered all the prior art, why isn't it fair game for opposing counsel to say well, here's some prior art in the initial examination that wasn't considered? What's improper about that? First thing that's improper is that the opening arguments by SSI did not just refer to the examiner. They began by talking about the patent office. That's at page 4390 of the appendix. So it wasn't and then after hearing these statements by SSI's counsel, Judge Chabria and what I would submit as an imminent exercise of discretion, Suus Ponte found that to be misleading and gave SSI options of how to deal with that. If they'd gone beyond the examiner, maybe so, but I don't believe their opening statement is going beyond the examiner. They talk specifically at 249 and he talks about the examiner's view and talks about what's before the examiner and we'll talk about a couple of other pieces of prior art that were not before the examiner and he says and there were some of these that weren't before the examiner and all of the discussion is about what was before the examiner. The very same issue that you had raised yourself in the opening statement. But the issue raised in the opening statement was what did what happened with the basic the statements on allowance. Are you talking about your opening statement? Yes sir, I'm sorry. As I recall it, the tech opening statement was just referring to the process of of how everything was before the examiner and the response to that is no, everything was not before the examiner. What's the matter with that? Well, I'm I'd direct you again to page 4390 of the appendix. Which page of the of the transcript is this? 248. 248? Oh yes, that's correct. Thank you. Okay, so what do you want to direct us to? So, line 16. Now the patent office did allow this because it didn't have a piece of prior art that disclosed a three-way valve and the additional allowance in figure 7. That's what we're that's all that we're we're looking at. Okay, but on the prior page it's perfectly clear that he's talking about the examiner. He says, and this is all this patent has that wasn't by the examiner's view already in the prior art. He says, we'll talk about a couple other pieces of prior art that were not before the examiner. The context is clear that he's talking about what was before the examiner. Are you disputing that? You're not are you disputing? I'm What is your point about the sentence? What is your point about the sentence? My point is that it's an overstatement to assert that they only talked about the examiner. I mean, there's a reference to the patent office. My broader point So you think they could have been your read of this was that they could have been referring to the IPR? No. So what else would they be referring to? My reading is that the district court did not abuse discretion by finding that this was potentially misleading about what was before the patent office. Okay. Tell me why. I mean, you referred us to this sentence. I'm reading the sentence. What's misleading about this? Well, the context is that the the patent office did not see all of the references that we're going to be talking about at this trial. That's what's being said. And given that the judge had already ruled that there was not going to be on a motion to eliminate he agreed with SSI. We're not going to we won't go into the the PTAB proceedings. But then given this the Holtzhalter reference or sorry the Bridgestone reference is now in this kind of unclear position of what way did the patent office see it or not? And so the district court gave SSI options about how to deal with it. They didn't have to Are you saying that this is incorrect and that the Bridgestone reference was before the exam? It was sorry it was before the patent trial it was before the PTAB I didn't So you're saying the confusion is that the jury could have construed the statement about what the patent office allowed to be talking about an IPR proceeding? Does the PTAB allow claims? No, I'm sorry. What I mean is that the jury could have been not knowing the details of how the proceedings work What do you mean by not knowing the details? You had spent quite a bit of time in the opening statement describing exactly what happened in the initial examination and relying on it and saying that the examiner had before the prior art because the examiner allowed the patent there should be a presumption you know, that they have a high hill to climb and so on and so forth There's no confusion You introduced it yourself You specifically and repeatedly told the jury about what happened in the initial examination and what I'm having trouble with is when the other side comes in and says well, that's not quite right they didn't have all the prior art before them I'm having trouble seeing what's wrong with that The inference that the I don't The trial court did not abuse its discretion Where in the record does the trial court discuss this? I'm looking for it Let me find that your honor 1843 page 44 4532 and after that in the appendix which is 389 of the transcript so suppose we were disagree with you and say that your opposing counsel in the opening statement was clearly just responding to what you were saying and was addressing the initial examination did the court abuse its discretion by allowing the IPR evidence to come in? No, your honor. Why not? Well, I think for one thing we have to consider the fact that the trial court gave SSI the option not to have the cross-examination happen that way but just simply to give an instruction that the in PTAP proceedings the reference at issue was considered and so having chosen the cross-examination route you know SSI sort of made its own bed but on Yeah, but what difference does that make? The choice was the same. The district court had concluded initially that he should not bring the PTAP stuff in and it was only based on this statement that the PTAP stuff should be allowed. So what does it matter that he had the choice between cross-examination or allowing a stipulation on the PTAP proceedings? That's neither here nor there. The impact is the same whether or not you're going to let the PTAP stuff in. Well, I mean I do think it's relevant that they were given the choice. The issue is the trial court found this to be sitting there observing what was going on. The trial court found it to be misleading. Can I ask again just that sentence that you were referring to us? Is it misleading because you think the jury would have thought that by saying the patent office the other side was talking about an IPR proceeding? Is that what was misleading about it? And that's why we should let the IPR proceeding in? I'm simply pointing out that the... I just want to know what was misleading about it. What's misleading... The reason I was pointing to that particular phrase is because the counsel in their brief repeatedly talks about how they referred only to the examiner. But the broader point is that the jury, the trial court did not abuse its discretion in thinking there might have been misleading to the jury who involved with... Did you object during that opening statement? With the... My understanding is that the trial counsel was about to object and the court beat him to it. Well, no, wait a second. Where's that? Well, he was going to bring a motion. This conversation beginning at 45-32 I think happens in a break with the... Counsel was about to bring up the issue and... But during the examination did counsel object? You can object during opening statement. I don't... I'm not entirely sure, but I don't believe that counsel objected during opening statement. He was going to raise the issue after. So just again, I'm sorry, maybe it's me, but I'm just trying... You keep using the word misleading. So I'm trying... So the basis for the judge... Your understanding of the basis for the judge's exclusion of this or being troubled by this is he thinks the jury could have thought that the patent office did allow this because they... That that reference the jury could construe as being the PTAT proceeding? Correct. I mean, the judge held... Said that, quote, absent the knowledge about the PTO's consideration of the prior and later proceedings, it creates a misimpression. It leaves a misimpression. I'm not saying you did it intentionally, but it leaves a misimpression. So how do you want to deal with that? Okay. Can I move you on to the validity question? Yes, Your Honor. Not to criticize at all that the magistrate judge was clearly doing his best to try to figure out what we were saying.  was before our court initially, right? The validity theory, the obviousness theory, and the use of these prior art references. I don't think it is significantly different. Let me point the court to page 42 of the appellant's opening brief. What's the cite on that? Blue brief? Yes. Oh, okay. I'm sorry, the opening brief. SSI is proposing that removing joint hose 66 and the second three-way valve 60 would result in a conventional tire repair kit with a three-way valve 48 and additional hose 54. This court, and it's the law of the case, held that, quote, Bridgetone does not disclose an additional hose cooperating with the tire because air tube 54 and Bridgetone is not directly connected to the tire as is additional hose 83 in the 110 path. Okay, so just taking that quote on its face, it's talking about hose 54. It's not talking about their new theory involving hose 66. They need two hoses here. They're referring to additional hose 54 as the number 54 as an additional hose. That was originally what they were doing. That we rejected, and now their theory is different. It's that hose 66 is the additional hose. Whether it's the additional, there has to be a primary hose and an additional hose, and they're trying to have an additional hose in the original hose where before there was only one, and they're doing that by basically trying to take apart the device and saying if you've got a hose. They're talking about modifying. They're talking about modifying it. There's a hose dangling here. That could be an additional hose. Why would our initial opinion have precluded necessarily? I mean, we rejected their theory, and that was largely based because the theory was based on a claim construction that we rejected. Why would we have necessarily wanted to preclude a different theory that talked about the same piece of prior art, but talked about it would have been obvious to modify this prior art? I'm not suggesting they're necessarily going to win on that argument, but why would we have been interested or even thought about precluding some different modification of the prior art reference? Well, I think it's important to note that the— and this is something that Judge Wallach raised. This all was dealt with by the district court on a motion in limine, and I think it's useful to look at that. It's at page 20 of the appendix, which is also attached to the opening brief, so you can just flip back. The court said, to the extent text objection seeks to preclude all reference to Bridgetone, the objection is denied. The Federal Circuit has addressed certain aspects of Bridgetone and Erickson, both alone and in combination. If SSI can still use these references in a way that doesn't contradict the Federal Circuit's decision and that presents no other admissibility problems, it may do so. The court, as far as I know, they did not make a further sort of offer of proof. We have this argument that they're submitting on appeal, that I submit is I do think it's inconsistent with this court's prior ruling. But in any event, it's quite clear that the trial court did not say you can't talk about Bridgetone. He didn't say you can't talk about Bridgetone, but he said you can't rely on Bridgetone for the additional hose. Did SSI try to raise the question of joint hose 66 being effectively the equivalent of additional hose 83 in the 110? Did they raise it at? Before the court, below. On remand. My memory is that they raised it. They tried to bring a summary judgment motion. The court denied summary judgment. Then there was this motion eliminated, which we've just read what the ruling was. And then, as far as I'm aware, there wasn't a further sort of here's what we want to say about which is, you know, they just didn't address the Bridgetone reference. It didn't come up at trial in this way. But they raised it in connection with the motion eliminated, right, and the summary judgment motion. Correct. But I'm saying that the ruling on motion eliminated is to say you need to be consistent with the federal circuit. And among other things, I don't think that saying that the hose 54 and 66 can be, you know, 54 can be taken out and suddenly that's one of the two hoses you can use. I mean, the court did not find 54 to be cooperating with the tire precisely because it was an internal hose. And, you know, cooperating with the tire means it's ready to be connected. And so I do think that there's an inconsistency there. You have one final point because your time has elapsed. Thank you, Your Honor. I would just address one final point that Judge Wall raised, which is that it is entirely correct that the inventor, Mr. Marini, explained that the patent, the tax device practices the patent. And Dr. King admitted that it embodies the patent and practices the patent. SSI argues that there wasn't a discussion sort of element by element, but Claim 26 was the only claim at issue in the case. And also the outer casing, which was the particular element of whether it connects the container of sealant to the compressor or not, that was the issue. Dr. King specifically admitted that that element was part of the embodying device. That's at page 4881 of the appendix. Was there any discussion in your red brief, just one more quick question, about that even if the district court was wrong about allowing you to put on the PTAB that it wasn't prejudicial, it was harmless error? Yes, Your Honor. Where is that in the red brief? I'm trying to find it now. Sorry for the delay. No, this isn't a trick question. I honestly don't recall whether you made that argument or not. So in the section of the brief that is discussing the PTAB proceedings, we point out under the Kearns case that... Give me a page. On page 32. In order to show that the district court abused its discretion, SSI must demonstrate that the exclusion prejudiced its substantial rights. Okay. And part of the issue with the... Sorry, Your Honor. It's up to you to show that they didn't, that it was harmless error. It's on you, not on them, right? Well, part of the harmlessness is that, you know, for example, the Holzhauser reference, which was part of what was dealt with in the PTAB proceedings, is, you know, this is the one where SSI's own expert says it doesn't have the vows that are in the patent. Wait a second. This page you're showing us is about Bridgestone. It's not about the IPRs. That's right. It's about Bridgestone. And then later in that section... Did you argue that the reference to the IPRs was harmless error? The... Well, I'm saying that SSI must demonstrate that the exclusion prejudiced its substantial rights. The discussion of the SSI's argument about PTAB follows in that same section, but we didn't say there's no demonstration, but specifically in that part... You didn't argue harmless error with respect to the PTAB plan? Not explicitly, but it's in that section, and it is their duty to show that. Okay, thank you, Your Honor. Thank you, Your Honors. I'll be brief since I did use up my time before. I just would address the points with respect to the Bridgestone reference not being allowed to show the additional O's. That was one error that was then further compounded with the introduction of the IPRs, which there was no opening of the door to. The opening statement did just discuss the examiner, and I think it's fair response to what their opening statement had done. That, in combination, prejudiced SSI or sealant systems from having a fair trial. To have the significant piece of prior art be precluded from using it to show the additional O's, and then also have either the court require a stipulation or a jury instruction that is effectively directed that this patent had already been reviewed and found to be valid, or to allow cross-examination, which was the Hobson's choice, sealant systems was provided, was prejudicial in a high degree because the way that was introduced to the jury meant that the jury was essentially directed in the role asserted from analyzing the validity of the 110 patent. And with that, Your Honors, I will rest. Thank you. We thank both sides, and the case is submitted.